IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ELLIS RICHARD ROSENBLATT,  §
                           §
              Plaintiff,   §
                           § Civil Action No. 3:06-CV-0957-D
VS.                        §
                           §
7-ELEVEN, INC.,            §
                           §
              Defendant.   §

MEMORANDUM OPINION
 AND ORDER 

        In this age discrimination action brought by an employee who
was discharged as part of a reduction in force ("RIF"), the
employer moves for summary judgment.  The court concludes that the
employee has not adduced sufficient evidence to enable a reasonable
jury to find that the employer's reasons for including him in the
RIF were pretextual, and it grants the employer's motion for
summary judgment.

I

        Defendant 7-Eleven, Inc. ("7-Eleven") hired plaintiff Ellis
Richard Rosenblatt ("Rosenblatt") as a Procurement Manager when he
was 61 years old.  Rosenblatt was employed at 7-Eleven for almost
four years before he was discharged in January 2006 as part of a
RIF.[1]

_____

        [1]The court recounts the evidence in a light favorable to
Rosenblatt as the summary judgment nonmovant and draws all
reasonable inferences in his favor.  *E.g., U.S. Bank Nat'l Ass'n v.
Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006)
(Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir.
2000)).

Before January 2006, Allen Udisky ("Udisky") was the Vice President of 7-Eleven's Procurement Department.  At that time, there were three separate groups within the Procurement Department, each headed by a separate director: Facilities Procurement, Direct Product Procurement, and Indirect Procurement.  During his tenure at 7-Eleven, Rosenblatt worked in the Facilities Procurement Group, reporting directly to Wayne Stoltzman ("Stoltzman"), who in turn reported to Udisky.  7-Eleven maintains that, as a member of the Facilities Procurement Group, Rosenblatt "most frequently supported the real estate and construction group," procuring products and services related to the structure of and equipment for the stores.

As part of an overall reorganization of the Department, Denis Wojcik ("Wojcik") became the Director of the Procurement Department.  Following Wojcik's appointment, Udisky and all three directors of procurement (including Stoltzman) were eliminated from the structure of the Department.  The reorganization plan called for the elimination, among other positions, of three Procurement Managers in the Facilities Procurement Group.  7-Eleven's stated reasons for undertaking the reorganization were to better serve the customer, to save money, and because the "Integrated Asset Management" project, which gave 7-Eleven the ability to improve how it handled procurement with customers, decreased the number of employees necessary in the Procurement Department.

Andrew Kuster ("Kuster") was asked to work with Wojcik to

carry out the RIF, and he was tasked with facilitating the elimination of three of the seven Procurement Managers in the Facilities Procurement Group.   7-Eleven initially planned to eliminate one position in the Direct Product Procurement group, but it later decided not to.   Kuster used a weighted factor analysis ("WFA") to determine which Procurement Managers in the Facilities Procurement Group would have their positions eliminated as part of the RIF.   This WFA analysis had never been used at 7-Eleven, and Kuster admits that he "made up" the process.   The WFA used six factors, including tenure, review, human resources plan ("HRP"), future potential, education, and customer satisfaction, to select which positions should be eliminated.   The same factors were used for all employees evaluated for the RIF, and 7-Eleven maintains that the WFA did not take age into consideration.

Kuster prepared the WFA forms for the RIF in the Facilities Procurement Group.   He came up with the tenure rating of each employee based on the date of the employee's offer letter.   7-Eleven hired Rosenblatt in March 2002, and at the time of the RIF he had been an employee for three years.   Accordingly, Rosenblatt's tenure rating on his WFA was "3."

Kuster based the employee's education rating on the highest level of education that the employee had received, assigning a "0" for a high school degree, a "5" for a bachelors degree, and a "10" for a masters degree.   Because Rosenblatt had earned a master's

degree, he received a score of "10."

For the review rating, Kuster considered each employee's most recent performance review, assigning a "0" for an "N" rating, a "5" for an "M" rating, and a "10" for an "I" rating. Rosenblatt had received an "M" on his most recent performance review, completed in 2005, so his review rating score on his WFA worksheet was a "5."

The HRP rating was based on the Facilities Procurement Group's HRP matrix. Kuster derived the HRP rating by examining a combination of the performance and potential portions of the HRP matrix. For the Facilities Procurement Group, the rankings of performance and potential had been prepared by Stoltzman and approved by Udisky. Kuster added the numerical performance ranking and the potential ranking of each employee in the Facilities Procurement Group and divided that total by two to arrive at an HRP score. Based on this calculation, Rosenblatt received an HRP score of "5" on his WFA worksheet.

Kuster based each employee's customer satisfaction rating on the employee's ability to satisfy future customers. Wojcik assisted Kuster with this factor, meeting with the future customers of the reorganized Procurement Department and reporting to Kuster his findings about each Procurement Manager's customer service abilities. 7-Eleven maintains that it was Wojcik's understanding that, at the time of Rosenblatt's termination in January 2006, his primary customers were in the Development Construction Group.

- 4 -

Accordingly, to determine Rosenblatt's customer satisfaction rating, Wojcik consulted Steve Hall ("Hall"), the head of the Facilities and Construction Group.  7-Eleven maintains that Hall had "colorful" comments about Rosenblatt, which Wojcik summarized as "[n]o value, not sure what he does."  Rosenblatt actually served several customers outside of Facilities, including 7-Eleven's Loss Prevention, Travel, Finance and V-Com Groups, but Wojcik did not contact any of these departments regarding Rosenblatt's performance.  Scot Lins ("Lins") was a customer of Rosenblatt and testified that he would be in a good position to evaluate Rosenblatt's performance.  But Lins was not consulted in any way in the decision to terminate Rosenblatt.  All Procurement Managers in the Facilities Procurement Group that Hall rated as "no use for him" received a "1" for their customer satisfaction rating, and those who Hall said were "ok" received a score of "5."  Because Hall's impression of Rosenblatt was that he "had no use for him," the customer satisfaction rating on Rosenblatt's WFA was a "1."

The future potential rating on the WFA was based on a combination of the potential rating on the HRP matrix and the customer feedback score.  An employee with low to above average potential on the HRP matrix, plus a low customer rating, received a "1" score on the WFA.  An employee with a low to above average potential on the HRP matrix, plus an average customer rating, received a "5" on the WFA.  And an employee with above average

potential on the HRP matrix, and a very good customer rating, received a "7." Rosenblatt received a "1" score on his WFA worksheet.

After the WFA was completed, Wojcik's process for determining which positions should be eliminated as part of the RIF was to consider the HRP profile sheet and the WFA that Kuster had completed. Wojcik had also met beforehand with Hall, the Facilities Procurement Group's primary customer. Based on this, Wojcik made the decision to terminate Rosenblatt. Wojcik had never met Rosenblatt, had never reviewed Rosenblatt's personnel file, and did not know what projects Rosenblatt had worked on. Wojcik also never interviewed Rosenblatt's two immediate supervisors, Stoltzman or Udisky, regarding Rosenblatt's employment or performance. Other than input from Hall and his own review of the WFA page and the HRP page, Wojcik considered no other information or data related to Rosenblatt before selecting him for termination.

Two other Procurement Managers were terminated in the Facilities Procurement Group: Luis Inguanzo ("Inguanzo") and Scott Thompson ("Thompson"). Inguanzo, Thompson, and Rosenblatt had the lowest WFA scores of the Procurement Managers in the Facilities Procurement Group. Inguanzo and Thompson were both in the protected class of persons age 40 and over, while several Procurement Mangers who were retained were much younger than Rosenblatt. One Procurement Manager who was retained, Scott Thorp

- 6 -

("Thorp"), was 37.  7-Eleven maintains that Wojcik did not know the ages of any of the Procurement Managers at the time he was conducting the RIF.

Following his termination, Rosenblatt filed this lawsuit alleging age discrimination, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*[2]  7-Eleven moves for summary judgment.

II

Under the ADEA, "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  In a case such as this one, where direct evidence of discrimination is unavailable, the plaintiff can prove discrimination using the "modified *McDonnell Douglas* approach." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). As modified, *McDonnell Douglas* consists of three stages.  First, the plaintiff must establish a prima facie case of discrimination, which "creates a presumption that the employer unlawfully discriminated against [him]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  The burden then shifts to the

---

[2]Rosenblatt originally asserted disparate treatment and disparate impact claims.  Based on the parties' joint stipulation of dismissal, the court later dismissed the disparate impact claim, leaving only the disparate treatment claim to be litigated.

employer to articulate a legitimate, nondiscriminatory reason for discharging the employee. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506-07 (1993). The defendant's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003). After the defendant articulates its legitimate nondiscriminatory reason for the action taken against the plaintiff, the burden shifts back to the plaintiff to demonstrate that the reason produced was a pretext for discrimination. *Id*. Rosenblatt may satisfy this burden by showing "that the legitimate reasons offered by [7-Eleven] were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000) (quoting *Burdine,* 450 U.S. at 253). That is, he must produce sufficient evidence for a reasonable trier of fact to find either that 7-Eleven's proffered explanation is unworthy of credence or that a discriminatory reason more likely motivated the decision to terminate him. *See Burdine,* 450 U.S. at 256. Even without direct evidence of age-motivated discrimination, if Rosenblatt can provide sufficient evidence to permit a reasonable jury to conclude that 7-Eleven's proffered legitimate nondiscriminatory reason is unworthy of credence, 7-Eleven's motion for summary judgment must be denied.

III

To determine whether 7-Eleven is entitled to summary judgment on Rosenblatt's discrimination claim, the court first addresses whether he has demonstrated a prima facie case.

A

To establish a prima facie case of discriminatory discharge under the ADEA, Rosenblatt must show that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Rachid*, 376 F.3d at 309 (citations and internal quotation marks omitted); *see also Brown v. CSC Logic, Inc.* 82 F.3d 651, 654 (5th Cir. 1996). In a RIF case, a plaintiff can satisfy the fourth element by providing "'evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003) (per curiam) (quoting *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996)).

Because 7-Eleven will not have the burden of proof at trial on Rosenblatt's age discrimination claim, it can meet its summary judgment obligation by pointing the court to the absence of evidence to support the claim. *See Celotex Corp. v. Catrett*, 477

- 9 -

U.S. 317, 325 (1986).  Once it does so, Rosenblatt must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in plaintiffs' favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Rosenblatt's failure to produce proof as to any essential element renders all other facts immaterial.  *Edgar v. Gen. Elec. Co.*, 2002 WL 318331, at *4 (N.D. Tex. Feb. 27, 2002) (Fitzwater, J.) (citing *Celotex Corp.*, 477 U.S. at 323).  Summary judgment is mandatory if Rosenblatt fails to meet his burden.  *Little*, 37 F.3d at 1076.

B

7-Eleven maintains that Rosenblatt cannot establish the fourth element of a prima facie case because he has not presented evidence tending to indicate that he was discharged because of his age.[3]  7-Eleven points to the absence of evidence that it intended to discriminate against Rosenblatt when it eliminated his position in the RIF.  It posits that it reached its decision to terminate him based on a business decision to restructure the Procurement Department, that the restructuring involved the elimination of three Procurement Managers in the Facilities Procurement Group, and

---

[3]It is undisputed that Rosenblatt was discharged and that he is a member of a protected class.  It also appears undisputed that Rosenblatt was qualified for his position.

that it conducted a ranking of the Procurement Managers in the Facilities Procurement Group based on reasonable factors other than age.  7-Eleven contends that Rosenblatt has not been replaced, no new Procurement Managers have been hired since the RIF, and it has not rehired any Procurement Managers who were terminated as a result of the RIF.  7-Eleven contends that Rosenblatt has failed to offer any evidence that suggests a nexus between his termination and his age and that, because he cannot establish the fourth element of a prima facie case, summary judgment should be granted.

Rosenblatt responds that discharging an older worker while retaining similarly-situated younger workers is sufficient to satisfy the fourth element in a RIF case.  He maintains that each of the three Procurement Managers who were terminated, including he, was in the protected class of persons over age 40, and that 7-Eleven retained several Procurement Managers who were much younger than he, at least one of whom was younger than age 40.  Rosenblatt specifically points to Thorp, who was 37 when the RIF occurred. Rosenblatt also cites three other Procurement Managers who were younger than he and who were retained during the RIF: Carolyn Carter ("Carter") (age 44), Greg Wilmeth ("Wilmeth") (age 48), and Terry McGill ("McGill") (age 45).  Rosenblatt maintains that the WFA scores of Carter, Wilmeth, and McGill were the same as or below his.  He contends that the evidence of disparate treatment appears on the face of the record because the oldest Procurement Manager,

with superior performance, better qualifications, more experience, and higher education was terminated, while less experienced, less educated, and lower performing employees were retained. Rosenblatt argues that because the ADEA prohibits discrimination based on age, an employer's decision to retain a substantially younger employee is a reliable indicator of age discrimination.

C

"[T]o establish a prima facie case, a plaintiff need only make a very minimal showing." *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985). That is, the burden is not an onerous one. *Burdine*, 450 U.S. at 253. A prima facie case merely raises the inference of discrimination, because the courts presume the employer's acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977).

In cases involving a RIF where the plaintiff has not been replaced, the fourth element of a prima facie case may be established by evidence that members outside the protected class remained in similar positions after the RIF. *Tucker v. SAS Inst., Inc.*, 462 F.Supp.2d 715, 725 (N.D. Tex. 2006) (Fish, C.J.) (citing *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 318 (5th Cir. 1997)); *Best v. GTE Directories Serv. Corp.*, 1993 WL 13143213, at *4 (N.D. Tex. Mar. 19, 1993) (Fitzwater, J.) ("The discharge coupled with

the retention of younger employees creates the presumption of discrimination in a RIF case." (citing *Thornbrough*, 760 F.2d at 644).

Rosenblatt maintains that he was the oldest Procurement Manager, that he was terminated at age 64, and that 7-Eleven retained several Procurement Managers who were much younger than he, with at least one under age 40. Because establishing a *prima facie* case is not difficult, the court holds that Rosenblatt's allegations are sufficient to satisfy the fourth element of the prima facie case. *See Amburgey v. Corhart Refractories Corp*., 936 F.2d 805, 813 (5th Cir. 1991) (finding that plaintiff established a prima facie case of discrimination by producing evidence that at the time of his dismissal, "younger, allegedly less qualified persons were retained"); *Nichols*, 81 F.3d at 41 (a "very minimal" amount of circumstantial evidence is sufficient to make out a prima facie case of discrimination).

IV

7-Eleven contends that it is entitled to summary judgment because Rosenblatt has not adduced evidence of pretext. It maintains that it restructured the Procurement Department and implemented the RIF to save money and to better serve the customers of the Procurement Department, and that the new "Integrated Asset Management" project decreased the number of employees necessary for the Procurement Department to function efficiently. 7-Eleven

- 13 -

argues that a RIF is presumptively a legitimate, nondiscriminatory reason for discharging an employee and that, to avoid summary judgment, Rosenblatt must, but has failed to, demonstrate that each of the reasons articulated by 7-Eleven is a pretext for age discrimination.

A

A RIF is presumptively a legitimate, non-discriminatory reason for a discharge. *Tucker*, 462 F.Supp.2d at 727 (citing *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996)). Accordingly, the burden shifts to Rosenblatt to "raise a genuine issue of material fact as to whether the employer's proffered reason was merely a pretext for age discrimination." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680 (5th Cir. 2001) (citing *Lindsey v. Prive Corp.*, 987 F.2d 324, 326 (5th Cir. 1993)). To create a material issue of fact, Rosenblatt must present "sufficient evidence to find that the employer's asserted justification is false." *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 903 (5th Cir. 2000) (quoting *Reeves*, 530 U.S. at 148). "[A]n employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason." *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (affirming summary judgment when plaintiff offered in response to employer's

- 14 -

legitimate, nondiscriminatory reason only his personal perceptions and speculation that his employer's decision was based on age).

B

As evidence of pretext, Rosenblatt first points out that each of the three Procurement Managers who were terminated, including he, was in the protected class of persons over age 40, and that 7-Eleven retained several Procurement Managers who were significantly younger, including Thorp, who was 37.  Rosenblatt also points to three other Procurement Managers who were younger than he and who were retained: Carter (44), Wilmeth (48), and McGill (45). Rosenblatt maintains that the WFA scores of Carter, Wilmeth, and McGill were the same as or below his.

Rosenblatt next argues that his performance exceeded that of almost all the other Procurement Managers who reported to Stoltzman, and that his cost savings and cost avoidance performance as a Procurement Manager exceeded that of most of his peers, including the younger ones who were retained.  Rosenblatt contends that this is evidence that he was clearly better qualified than younger employees who were not discharged.

7-Eleven contends in its reply that Rosenblatt's assertion that his qualifications, experience, and education exceeded that of younger Procurement Managers who were retained does not demonstrate pretext; that although Rosenblatt may believe his experience and education should have counted more than other factors in the WFA,

he has only succeeded in providing evidence that he disagrees with business decisions 7-Eleven made about which factors to consider, and not that 7-Eleven's stated reasons for terminating him are untrue; that with respect to the criteria for the RIF, it has adduced evidence that Rosenblatt was not as well qualified as the retained employees; that Rosenblatt's assertion that he was clearly better qualified does not support the conclusion that he actually was better qualified; that Stoltzman's testimony that Rosenblatt was one of the top two Procurement Managers applied only to his alleged cost savings, which were not considered as part of the WFA, and even if Rosenblatt was one of the top two Procurement Managers in terms of cost savings, this does not establish that he was clearly better qualified than the retained Procurement Managers under the relevant criteria; that the evidence is clear that it based its termination decision on the WFA rankings, and Rosenblatt has not shown that he was "clearly better qualified" than other retained employees; and that Rosenblatt's comparison of his qualifications and WFA scores to Carter, Wilmeth, and McGill is irrelevant because those Procurement Managers worked in Direct Procurement under the supervision of Glenn Sparks ("Sparks") while Rosenblatt worked in the Facilities Procurement Group under Stoltzman's supervision, and these three are not "similarly situated" or "nearly identical" to Rosenblatt.

C

A plaintiff can raise a fact issue on the question of pretext in a RIF case by adducing evidence that "he was *clearly* better qualified than younger employees who were retained." *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 123 (5th Cir. 1992) (emphasis in original) (citing *Thornbrough*, 760 F.2d at 647). "However, this evidence must be more than merely subjective and speculative." *Nichols*, 81 F.3d at 42 (citing *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 119 (5th Cir. 1993); *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 564 (5th Cir. 1983)). "To establish a fact question as to relative qualifications, a plaintiff must provide sufficiently specific reasons for his opinion; mere subjective speculation will not suffice." *Id.*

At the outset, the court notes that Rosenblatt cannot—by comparing his qualifications and WFA scores to those of Carter, Wilmeth, and McGill—establish that he was clearly better qualified than younger employees who were retained. This is because these three Procurement Managers worked in a different division of the Procurement Department from the one in which Rosenblatt was employed. Although 7-Eleven completed the WFA on the members of the Direct Procurement Group, it ultimately chose to eliminate three of the seven Facilities Procurement Managers and not to terminate any members of the Direct Procurement Group. 7-Eleven's choice to conduct the RIF this way is a business decision that the

- 17 -

court will not second-guess. *See Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988) ("The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers." (citing *Thornbrough*, 760 F.2d at 647; *Elliott*, 714 F.2d at 567)); *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988) ("[W]e do 'not sit as a super-personnel department that reexamines an entity's business decisions.'" (quoting *Dale v. Chi. Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986)). The only relevant 7-Eleven employees to whom Rosenblatt can compare himself are those other members of the *Facilities Procurement Group* who were younger and whom 7-Eleven retained during the RIF.

Rosenblatt maintains that his qualifications, experience, and education exceeded that of the younger Procurement Managers who were retained. He also argues that his performance exceeded that of almost all of the other Procurement Managers who reported to Stoltzman. As evidence that his performance exceeded that of almost all the other Procurement Managers who reported to Stoltzman, Rosenblatt points to the deposition of Stoltzman, in which Stoltzman testified that "the cost savings and cost avoidance achieved by Richard was always the top one or two of the group." P. App. 7. Rosenblatt also cites the deposition testimony of Lins, one of Rosenblatt's customers during his employment with 7-Eleven,

- 18 -

in which Lins testified that Rosenblatt was at the "[t]op of the heap" in terms of procurement knowledge.  P. App. 36.  But neither Stoltzman nor Lins was tasked with conducting the RIF in the Facilities Procurement Group.  And their subjective opinions of Rosenblatt's performance are insufficient to enable a reasonable jury to find that Rosenblatt was "clearly better qualified" than the younger employees who were retained.  *See Smith v. Hewlett-Packard Co.*, 2007 WL 669508, at *5 (N.D. Tex. Mar. 6, 2007) (Fitzwater, J.) (holding that "the mere fact that [the person charged with conducting the RIF]'s evaluation differed from the opinions of others does not raise a genuine issue of fact"); *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) ("The existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification." (citing *Bienkowski*, 851 F.2d at 1507)).  Rosenblatt's evidence establishes that he was terminated, that younger employees were retained, and that his former supervisor and one of his customers had high opinions of his performance.  But this evidence is insufficient to enable a reasonable jury to find that Rosenblatt was clearly better qualified than the younger employees whom 7-Eleven decided to retain.  And the proof is also insufficient to permit a reasonable jury to find that 7-Eleven's proffered reason for terminating

Rosenblatt was pretextual.

Rosenblatt does not point to specific evidence that would enable a reasonable jury to find that any of the retained employees was *less* qualified than Rosenblatt.  In fact, the evidence establishes that the employees whom 7-Eleven retained during the RIF all scored higher than Rosenblatt did on the WFA.  The WFA was designed to quantify the qualities that 7-Eleven determined were most important for the position of Facilities Procurement Manager. Rosenblatt's evidence that his cost savings and cost avoidance performance as a Procurement Manager exceeded that of most of his peers, including the younger ones who were retained, is insufficient to enable a reasonable jury to find that Rosenblatt was "clearly better qualified," because this factor was not even taken into account as part of the WFA.  Accordingly, accepting as true the fact that Rosenblatt excelled in these areas, this proof would not enable a reasonable jury to find pretext.

D

1

Rosenblatt next maintains that 7-Eleven's conscious departure from its written policies and procedures when conducting its RIF may support an inference of age discrimination if the plaintiff establishes some nexus between employment actions and the plaintiff's age.  Rosenblatt points out that although 7-Eleven's Human Resources Policy 4.2 states that an employee's immediate

supervisors should be consulted before an involuntary termination, his selection for termination occurred without any warning to, or consultation with, his supervisors, Stoltzman and Udisky.

7-Eleven responds that Rosenblatt's former supervisors, Stotlzman and Udisky, were both terminated as a result of the RIF in the Procurement Department.  Accordingly, Kuster worked with the new head of the Procurement Department, Wojcik, in designing and carrying out the RIF.  7-Eleven maintains that it in fact complied with its policy in conducting the RIF, because Wojcik was the supervisor of all Procurement Managers, including Rosenblatt, at the time the RIF was implemented.  7-Eleven maintains that even if it did not follow its own termination procedures, this does not alone raise a fact issue because there is no evidence that Rosenblatt's age was a factor in the decision to terminate his employment.

2

"An employer's conscious, unexplained departure from its usual polices and procedures when conducting a RIF may in appropriate circumstances support an inference of age discrimination if the plaintiff establishes some nexus between employment actions and the plaintiff's age."  *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 396 (5th Cir. 2002) (citing *Tex. Instruments*, 100 F.3d at 1182).

> Proof that an employer did not follow correct
> or standard procedures in the termination or
> demotion of an employee may well serve as the
> basis for a wrongful discharge action under
> state law.  As we have stated, however, the
> ADEA was not created to redress wrongful
> discharge simply because the terminated worker
> was over the age of forty.  A discharge may
> well be unfair or even unlawful yet not be
> evidence of age bias under the ADEA. To make
> out an ADEA claim, the plaintiff must
> establish the existence of discrete facts that
> show some nexus between the employment actions
> taken by the employer and the employee's age
> . . . . [A] bald assertion that one exists
> . . . simply will not suffice.

*Moore v. Eli Lilly Co.*, 990 F.2d 812, 819 (5th Cir. 1993) (citing

*Bienkowski*, 851 F.2d at 1508 n.6).  But even assuming *arguendo* that

in not consulting Stoltzman or Udisky, 7-Eleven departed from its

standard termination procedures, this variance alone is not

sufficient to raise a genuine issue of fact on the issue of

pretext.

Rosenblatt has not adduced evidence sufficient to establish a

nexus between his termination and his age.  The fact that

Rosenblatt was the oldest Procurement Manager terminated, combined

with the allegation that 7-Eleven departed from standard

termination procedures, does not of itself establish the requisite

nexus between termination and age.  Moreover, there is nothing that

a reasonable jury could find is suspect in 7-Eleven's decision to

permit Wojcik and Kuster to make the termination decisions without

consulting Stoltzman or Udisky, because Stoltzman and Udisky *were*

*also being terminated* as part of the restructuring of the

- 22 -

department.  Accordingly, any failure to follow proper termination procedures is insufficient of itself to permit a reasonable jury to find pretext.

E

1

Rosenblatt next challenges the method by which 7-Eleven chose the employees to terminate.  He argues that Kuster "made up" the WFA analysis, and the newly fabricated process was not written down within the memos, policies, or procedures of 7-Eleven's Human Resources Department.  Rosenblatt maintains that, by collecting the arbitrary and subjective data and then scoring and weighting it for impact, 7-Eleven could manipulate the numbers to reach the desired result.  He points to the fact that he worked for several customers within and outside the Facilities Procurement Group, but that the only customer with whom Wojcik spoke regarding Rosenblatt's performance was Hall.  Rosenblatt contends that Wojcik's sparse subjective records of Hall's feedback are inherently suspect given the similarity to the customer feedback in Sparks's group, the absence of detail, and the absence of notes, and maintains that it is clear that Wojcik and Kuster did little or no independent investigation regarding the reasons Rosenblatt was being fired.  He points out that Wojcik had never met him, had never reviewed his personnel files, did not know what projects he had worked on, did not know if he had ever been written up or counseled, did not have

- 23 -

a good working knowledge of what factors made up the WFA, including the HRP element, and was not involved in the WFA process. Rosenblatt also points to evidence that Kuster had never met him, had no records of write-ups, counseling, or anything else in Rosenblatt's file that negatively questioned his performance, did not review his resume or job description, did not talk either to Stoltzman or to Udisky before deciding to terminate him, never totaled up the numbers on the competency assessments that existed for the Procurement Managers, and did not use Rosenblatt's 2004 or 2005 performance appraisals in determining whether he should be terminated.

7-Eleven responds that Rosenblatt cannot defeat summary judgment by asserting that he would have carried out the RIF differently. It posits that it was entitled to implement the RIF according to its preferred criteria of performance, and that the exercise of its business judgment should not be disturbed. 7-Eleven contends that Rosenblatt has not raised a genuine issue of material fact as to the truth of the explanation 7-Eleven gave regarding the process used in the RIF that resulted in his termination; Rosenblatt does not dispute that Kuster was asked to facilitate the elimination of three of the seven Procurement Managers in the Facilities Procurement Group; he does not dispute that Kuster developed the WFA to carry out this assignment; he does not dispute that Kuster actually used the factors that he testified

he followed in the WFA to accomplish his assignment; he does not dispute the mathematical calculations of the factors of the WFA; and he does not dispute that the Procurement Managers in the Facilities Procurement Group with the three lowest scores were terminated.  7-Eleven also points out that Rosenblatt does not challenge Hall's assessment of Rosenblatt's customer service or Wojcik and Kuster's reliance on that assessment in the WFA. Rather, Rosenblatt has relied on the opinion of different customers to suggest that Wojcik and Kuster "made a mistake" in relying on Hall's assessment.  7-Eleven maintains that the mere fact that Hall's evaluation differed from the opinions of others does not raise a genuine issue of fact, and it argues that Rosenblatt has failed to establish that 7-Eleven's ranking of him in the WFA, accurate or not, was not the real reason for his termination.

2

"The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers." *Bienkowski*, 851 F.2d at 1507-08 (citing *Thornbrough*, 760 F.2d at 647; *Elliott*, 714 F.2d at 567).  "The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated." *Id.* at 1508 (citations omitted).  Rosenblatt's criticism of the WFA and of Kuster and Wojcik's business decision to rely on the WFA in determining which

employees to terminate is insufficient to enable a reasonable jury to find that the reasons on which 7-Eleven relies for including Rosenblatt in the RIF are pretextual.  7-Eleven correctly points out that although Rosenblatt criticizes the way in which 7-Eleven conducted the RIF, he has not adduced any evidence that would enable a reasonable jury to find that 7-Eleven did not include him in the RIF for the reasons stated but instead did so because of his age.  *See Smith*, 2007 WL 669508, at *5 (granting summary judgment in RIF case where plaintiff presented no evidence that would enable reasonable jury to find that person whose evaluation was used in RIF did not in fact subjectively hold opinion of plaintiff's performance that resulted in his termination).  Rosenblatt argues that, by collecting the arbitrary and subjective data and then scoring and weighting it for impact, 7-Eleven could manipulate the numbers to reach the desired result.  But he has failed to adduce evidence that would enable a reasonable jury to find that this is what 7-Eleven actually did.  Rosenblatt's allegations are conclusory and unsupported by the evidence and, as such, are not competent summary judgment evidence.  *See Eldridge v. Am. Residential Servs. L.L.C.*, 2006 WL 2035654, at *11 (N.D. Tex. July 19, 2006) (Fitzwater, J.) ("Conclusory assertions, made without any citation to evidence, are insufficient to withstand summary judgment." (citing *Ramsey v. Henderson,* 286 F.3d 264, 269 (5th Cir. 2002)).  It is undisputed that the three employees who scored the

lowest on the WFA were the three whom 7-Eleven terminated in the RIF.  Rosenblatt's criticism of the WFA and the methods by which 7-Eleven selected the employees to terminate is insufficient to enable a reasonable jury to find that the reasons on which 7-Eleven relies for including him in the RIF were pretextual.

F

1

Finally, Rosenblatt argues that 7-Eleven's Notice of Employee Separation for Rosenblatt belies its reasoning because it failed to so characterize Rosenblatt's separation.  He also maintains that he has evidence that he was targeted for termination before January 16, 2006 and that 7-Eleven then "made up" an unprecedented unwritten scheme that relied on subjective, arbitrary criteria to achieve a predetermined result.  Rosenblatt posits that the alleged restructuring was no more than a reshuffling of personnel.

7-Eleven replies that the "projected termination date" of January 16, 2006 is actually seen by the 7-Eleven Human Resources Department as "Date Last Worked," and it is the last day worked that is entered into that field; that the printout showing Rosenblatt's "reason for leaving" as voluntary is not indicative of the reason for his termination, because 7-Eleven uses the field to classify an employee for retiree benefits purposes; and that the "reshuffling" argument fails by Rosenblatt's own arguments, since Rosenblatt acknowledges that three Procurement Managers were

- 27 -

terminated as part of the RIF and that the terminations were based
on the WFA.   7-Eleven also maintains that the organizational
structure of the Department undisputedly changed as a result of the
RIF.  Before the RIF, the Procurement Department had 18 Procurement
Managers and three Procurement Directors, and after the RIF, it had
12 Procurement Managers and no Procurement Directors.   7-Eleven
also contends that it is uncontroverted that an entire supervisory
level of Procurement Directors was eliminated in the RIF, and that
the overall number of employees in the department decreased from 32
in October 2004 to 24 in August 2006.[4]

2

        The court holds that neither Rosenblatt's evidence relating to
the HR files nor his argument that the RIF was merely a reshuffling
establishes that the reasons 7-Eleven gave for selecting him for
the RIF were pretextual.  A reasonable jury could only find that
the RIF took place, that Wojcik removed and replaced the heads of
the three Procurement Departments, and that three of the seven
Facilities Procurement Managers were terminated.  Furthermore, the
notations regarding Rosenblatt's "projected termination date," and
"reason for leaving" would not permit a reasonable jury to find
pretext.

--------

        [4]7-Eleven filed on a May 22, 2007 a motion for leave to file
a reply appendix supporting these allegations.  Because the court
is not relying on the evidence that 7-Eleven includes in the reply
appendix, it denies the motion as moot.

G

Even if the court were unable to conclude that Rosenblatt has failed to raise a genuine issue of material fact on the question of pretext, it would nonetheless conclude in this case that 7-Eleven is entitled to summary judgment.  "[T]here [are] instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."  *Reeves*, 530 U.S. at 148.  The plaintiff might create "only a weak issue of fact as to whether the employer's reason was untrue and there [may be] abundant and uncontroverted independent evidence that no discrimination had occurred."  *Id.* (citing *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1291-92 (D.C. Cir. 1998)).  It is "possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination."  *Crawford*, 234 F.3d at 903 (citing *Travis v. Bd. of Regents of the Univ. of Tex. Sys.*, 122 F.3d 259 (5th Cir. 1997)).

Assuming that Rosenblatt has somehow raised a genuine issue of fact concerning pretext, it is a weak issue of fact, and there is abundant, uncontroverted evidence that no age discrimination occurred.  When 7-Eleven hired Rosenblatt, he was 61.  There is no evidence that Rosenblatt's age was ever considered in any respect or that anyone at 7-Eleven ever made any negative age-related

comments about Rosenblatt or anyone else.  In fact, the evidence shows that those responsible for deciding whom to include in the RIF were not even aware of Rosenblatt's age at the time they decided to terminate his employment.  Rosenblatt does not contend that there is such proof, and he cites none in his brief.  His case relies on pretext alone.

There is abundant proof, however, that age did not play a role in 7-Eleven's RIF determination.  As noted, the summary judgment record establishes that 7-Eleven hired Rosenblatt when he was 61. Moreover, during the RIF, all of the retained employees, with the exception of Thorp, were over the age of 40, and those responsible for deciding which employees to terminate were unaware of the ages of any of the Procurement Managers.

                              *       *       *

Rosenblatt has failed to introduce evidence that would permit a reasonable jury to find that 7-Eleven's legitimate, nondiscriminatory reasons for including him in the RIF were pretextual.  Accordingly, the court grants 7-Eleven's April 6, 2007 motion for summary judgment and dismisses this action with prejudice by judgment filed today.

**SO ORDERED.**

July 27, 2007.

                                   _____
                                   SIDNEY A. FITZWATER
                                   UNITED STATES DISTRICT JUDGE

- 30 -